IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| STEWART ABRAMSON, individually and on behalf of a class of all persons and entities similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>NORDIC ENERGY SERVICES LLC, WORLDWIDE TELECOM LLC and TINA PERROTTI<br><br>Defendants. | Case No.<br><br>CLASS ACTION COMPLAINT |

**CLASS ACTION COMPLAINT**

**Preliminary Statement**

1. As the Supreme Court recently explained, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back. As relevant here, the Telephone Consumer Protection Act of 1991, known as the TCPA, generally prohibits robocalls to cell phones and home phones." *Barr v. Am. Ass'n of Political Consultants*, No. 19-631, 2020 U.S. LEXIS 3544, at *5 (July 6, 2020).

2. Plaintiff Stewart Abramson ("Plaintiff") brings this action under the TCPA after he received a pre-recorded message call on his cellular telephone from Worldwide Telecom LLC ("Worldwide Telecom"), operated by Tina Perrotti, promoting the services of Nordic Energy Services LLC ("Nordic").

3. The Plaintiff never consented to receive the call, which was placed to him for telemarketing purposes. Because telemarketing campaigns generally place calls to hundreds of thousands or even millions of potential customers *en masse*, the Plaintiff brings this action on behalf of a proposed nationwide class of other persons who received illegal telemarketing calls from or on behalf of Defendant.

4. A class action is the best means of obtaining redress for the Defendants' wide scale illegal telemarketing and is consistent both with the private right of action afforded by the TCPA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

## Parties

5. Plaintiff Stewart Abramson is a Pennsylvania resident.

6. Defendant Nordic Energy Services LLC is an Illinois limited liability company and a resident of this District with its principal place of business in Oakbrook Terrace, IL. The Defendant has a Registered Agent of Christopher D. Schuering, 506 Vermont St, Quincy, IL 62301.

7. Defendant Worldwide Telecom LLC is a Wyoming corporation with a registered agent of Capital Administrations LLC, 1712 Pioneer Ave., Suite 115 in Cheyenne, WY 82001.

8. Defendant Tina Perrotti is the operator of Worldwide Telecom with an address of 283 Forbes Ave. in New Haven, CT 06512.

## Jurisdiction & Venue

9. The Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because the Plaintiff's claims arise under federal law.

10. Nordic is a resident of this District.

11. Worldwide Telecom and Ms. Perrotti are subject to specific personal jurisdiction in this District as they signed an agreement with Nordic Energy to promote Nordic Energy services in this District. That contract, upon information and belief, has a provision requiring disputes related to that contract to be litigated in Illinois. Furthermore, Worldwide Telecom and Ms. Perrotti were authorized to solicit customers in the nine states that Nordic offers services, including Illinois.

12. Venue is proper under 28 U.S.C. § 1391(b)(1) and(2) because a substantial part of the events or omissions giving rise to the claim occurred in this District, as the telemarketing campaign that called the Plaintiff was organized from this District, and because the Defendant resides in this District.

## The Telephone Consumer Protection Act

13. In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy [.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

<u>The TCPA Prohibits Automated Telemarketing Calls</u>

14. The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service" *See* 47 U.S.C. § 227(b)(1)(A)(iii).

15. The TCPA provides a private cause of action to persons who receive calls in violation of 47 U.S.C. § 227(b)(1)(A). *See* 47 U.S.C. § 227(b)(3).

16. The TCPA also makes it unlawful "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party." *See* 47 U.S.C. § 227(b)(1)(B).

17. According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

18. The FCC also recognized that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, CG Docket No. 02-278, Report and Order, 18 F.C.C. Rcd. 14014, 14115 ¶ 165 (2003).

19. In 2013, the FCC required prior express written consent for all autodialed or prerecorded telemarketing calls ("robocalls") to wireless numbers, numbers for which the called party is charged for the call, and residential lines. Specifically, it ordered that:

> [A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received "clear and conspicuous disclosure" of the consequences of providing the requested consent, i.e., that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates.[] In addition, the written agreement must be obtained "without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.[]"

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C. Rcd. 1830, 1844 (2012) (footnotes omitted).

Individual Officer Liability Under the TCPA

20. Ms. Perrotti is the operator of Worldwide Telecom and is liable for its conduct.

21. Under the TCPA, an individual such as Ms. Perrotti, may be personally liable for the acts alleged in this Complaint pursuant to 47 U.S.C. § 217 of the TCPA, which reads, *inter alia*:

> [T]he act, omission, or failure of any officer, agent, or other person acting for or employed by any common carrier or user, acting within the scope of his employment, shall in every case be also deemed to be the act, omission, or failure of such carrier or user *as well as of that person*.

*See* 47. U.S.C. § 217 (emphasis added).

22. When considering individual officer liability under the TCPA, other Courts have agreed that a corporate officer involved in the telemarketing at issue may be personally liable under the TCPA. *See, e.g.*, *Jackson Five Star Catering, Inc. v. Beason*, 2013 U.S. Dist. LEXIS 159985, *10 (E.D. Mich. Nov. 8, 2013) ("[M]any courts have held that corporate actors can be individually liable for violating the TCPA "where they 'had direct, personal participation in or personally authorized the conduct found to have violated the statute.'"); *Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 415-16 (D. Md. 2011) ("If an individual acting on behalf of a corporation could avoid individual liability, the TCPA would lose much of its force.").

23. Ms. Perrotti personally participated in the actions complained of by (a) working with Nordic to select the phone numbers that would be called; (b) working with Nordic on the scripting that would be used on the call and (c) selecting the dialing equipment used to make the calls.

## Factual Allegations

24. Nordic is a competitive/alternative electric generation supplier that attempts to sell their deregulated services to residents of Illinois, Indiana, Maryland, Massachusetts, Michigan, New Jersey, Ohio, Pennsylvania and Virginia.

25. To generate business of its electric services, Nordic relies on telemarketing.

26. In fact, Nordic previously settled a complaint for $310,800 with the Illinois Commerce Commission related to their telemarketing tactics.

27. However, Nordic's contact with the potential new customers is limited, and the telemarketing is often conducted by third parties in an effort to avoid liability.

28. One of Nordic's strategies for telemarketing involves these third parties using pre-recorded messages to solicit business.

29. Nordic permits the use of this equipment and the technology because it allows for thousands of automated calls to be placed at one time, but its telemarketing representatives, who are paid by the hour, only talk to individuals who pick up the telephone.

30. Through this method, Nordic shifts the burden of wasted time to the consumers it calls with unsolicited messages.

The Call to Mr. Abramson

31. Plaintiff Abramson is a "person" as defined by 47 U.S.C. § 153(39).

32. Plaintiff's cellular telephone number is (412) 418-XXXX.

33. Mr. Abramson has listed that number on the National Do Not Call Registry.

34. That number is assigned to a cellular telephone service.

35. The Plaintiff received a call on April 1, 2021.

36. The call was a pre-recorded message that promoted energy services that stated:

"Hello. This is an apology call from your utility company. It has come to our knowledge that you have been paying more than your consumption from previous few months. You will be reimbursed by fifty dollar, along with thirty five percent discount on your electric and gas bills. Please press one to get your reimbursement."

37. The call did not mention the Plaintiff's name and was not personalized in any way, instead using generic terms intended for a mass audience.

38. The company was not identified through their Caller ID or in the prerecorded message, so the Plaintiff pressed one to speak with a live agent.

39. The agent claimed he was calling from Nordic.

40. The Plaintiff also identified Nordic because he received a verification that it was Nordic calling from a third-party verification company as part of the telemarketing pitch for the call he received.

41. However, prior to filing this lawsuit, the Plaintiff contacted Nordic, who informed him that Global Marketing Resources was the company that contacted him initially.[1]

42. Plaintiff and the other call recipients were harmed by these calls. They were temporarily deprived of legitimate use of their phones because the phone line was tied up during the telemarketing calls and their privacy was improperly invaded. Moreover, these calls injured Plaintiff and the other call recipients because they were frustrating, obnoxious, annoying, were a nuisance and disturbed the solitude of plaintiff and the class.

## **Nordic's Liability**

43. For more than twenty years, the FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In re Rules & Regulations Implementing the TCPA*, CC Docket No. 92-90, Memorandum Opinion and Order, 10 FCC Rcd 12391, 12397 (¶ 13) (1995).

44. On May 9, 2013, the FCC released a Declaratory Ruling holding that a corporation or other entity that contracts out its telephone marketing "may be held vicariously

---

[1] Worldwide Telecom was formerly known as Global Marketing Resources, which is how Nordic referred to them when Mr. Abramson contacted them.

liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers."[2]

45. In that ruling, the FCC instructed that sellers such as Nordic may not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "[s]ellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy."

*May 2013 FCC Ruling*, 28 FCC Rcd at 6588 (¶ 37) (internal citations omitted).

46. The May 2013 FCC Ruling further clarifies the circumstances under which a telemarketer has apparent authority:

> [A]pparent authority may be supported by evidence that the seller allows the outside sales entity access to information and systems that normally would be within the seller's exclusive control, including: access to detailed information regarding the nature and pricing of the seller's products and services or to the seller's customer information. The ability by the outside sales entity to enter consumer information into the seller's sales or customer systems, as well as the authority to use the seller's trade name, trademark and service mark may also be relevant. It may also be persuasive that the seller approved, wrote or reviewed the outside entity's telemarketing scripts. Finally, a seller would be responsible under the TCPA for the unauthorized conduct of a third-party telemarketer that is otherwise authorized to market on the seller's behalf if the seller knew (or reasonably should have known) that the telemarketer was violating the TCPA on the seller's behalf and the seller failed to take effective steps within its power to force the telemarketer to cease that conduct.

FCC Rcd at 6592 (¶ 46).

---

[2] *In re Joint Petition Filed by DISH Network, LLC et al. for Declaratory Ruling Concerning the TCPA Rules*, 28 FCC Rcd 6574, 6574 (¶ 1) (2013) ("May 2013 FCC Ruling").

47. Moreover, Nordic maintained interim control over the telemarketer's actions.

48. For example, Nordic controlled the states that it allowed the telemarketer to call.

49. Nordic also gave interim instructions to the telemarketer by providing approval on the scripting that could be used on the calls.

50. The telemarketer transferred customer information directly to Nordic's third party vendor, who had the ability to bind them in contract. Thus, the company that Nordic hired has the "ability . . . to enter consumer information into the seller's sales or customer systems," as discussed in the May 2013 FCC Ruling. As such, the company that Nordic hired is an apparent agent of Nordic.

51. Furthermore, Nordic knew, or should have known, that Worldwide Telecom was violating the TCPA as Ms. Perrotti's various entities have been involved in litigation for violating the TCPA's restrictions on robocalling.

52. Finally, the May 2013 FCC Ruling states that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information." *Id.* at 6592-593 (¶ 46). Evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593 (¶ 46).

## Class Action Statement

53. As authorized by Rule 23(b)(2) and/or 23(b)(3) of the Federal Rules of Civil Procedure, Plaintiff brings this action on behalf of all other persons or entities similarly situated throughout the United States.

54. The Class of persons Plaintiff proposes to represent includes:

<u>Automated Telemarketing Call Class</u>

All persons within the United States: (a) to whom Worldwide Telecom and/or other third parties acting on Nordic's behalf, made one or more non-emergency telephone calls; (b) to a cellular telephone; (c) using an artificial or prerecorded voice; and (d) at any time in the period that begins four years before the date of filing this Complaint to trial.

55. Excluded from the class are the Defendants, any entities in which the Defendants have a controlling interest, the Defendants' agents and employees, any Judge to whom this action is assigned, and any member of the Judge's staff and immediate family.

56. The proposed class members are identifiable through phone records and phone number databases.

57. The potential class members number in the thousands, at least. Individual joinder of these persons is impracticable.

58. Plaintiff is a member of the proposed Class.

59. There are questions of law and fact common to Plaintiff and to the proposed Class, including but not limited to the following:

    a. Whether Nordic is vicariously liable for the calls at issue;

    b. Whether the telemarketing calls were placed without obtaining the recipients' valid prior express written consent; and

    c. Whether the Plaintiff and the class members are entitled to statutory damages because of Defendants' actions.

60. Plaintiff's claims are based on the same facts and legal theories as the claims of all class members, and therefore are typical of the claims of class members, as the Plaintiff and class members all received telephone calls through the same automated telemarketing process.

61. Plaintiff is an adequate representative of the Class because his interests do not conflict with the interests of the Class, he will fairly and adequately protect the interests of the Class, and he is represented by counsel skilled and experienced in class actions, including TCPA class actions.

62. Common questions of law and fact predominate over questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of the controversy. The only individual question concerns identification of class members, which will be ascertainable from records maintained by Nordic and/or its agents.

63. The likelihood that individual class members will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case, and given the small recoveries available through individual actions.

**Legal Claims**

**Count One:**
**Violations of the TCPA, 47 U.S.C. § 227(b)**

64. Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

65. The foregoing acts and omissions of Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227, by making calls, except for emergency purposes, with a pre-recorded message to a cellular telephone line of the Plaintiff.

66. As a result of Defendants' and/or its affiliates, agents, and/or other persons or entities acting on Defendants' behalf's violations of the TCPA, 47 U.S.C. § 227, Plaintiff and members of the Class presumptively are entitled to an award of $500 in damages for each and every call made.

67. Plaintiff and members of the Class are also entitled to and do seek injunctive relief prohibiting Defendants and/or its affiliates, agents, and/or other persons or entities acting on Defendants' behalf from making calls, except for emergency purposes, with a pre-recorded message, absent an emergency circumstance, in the future.

68. The Defendants' violations were negligent, willful, or knowing.

## Relief Sought

For himself and all class members, Plaintiff requests the following relief:

A. Certification of the proposed Class;

B. Appointment of Plaintiff as representative of the Class;

C. Appointment of the undersigned counsel as counsel for the Class;

D. A declaration that Defendants and/or its affiliates, agents, and/or other related entities' actions complained of herein violate the TCPA;

E. An order enjoining Defendants and/or its affiliates, agents, and/or other persons or entities acting on Defendants' behalf from making calls, except for emergency purposes, using a pre-recorded message;

F. An award to Plaintiff and the Class of damages, as allowed by law;

G. Leave to amend this Complaint to conform to the evidence presented at trial; and

H. Orders granting such other and further relief as the Court deems necessary, just, and proper.

**Plaintiff request a jury trial as to all claims of the complaint so triable.**

                                                PLAINTIFF,
By his attorneys

*/s/ Anthony I. Paronich*
Anthony I. Paronich

                                                                       Paronich Law, P.C.
                                                                       350 Lincoln Street, Suite 2400
                                                                       Hingham, MA 02043
                                                                       (508) 221-1510
                                                                       anthony@paronichlaw.com

Dated: April 26, 2021